[Civ. No. 3151.   Fourth Dist.   Feb. 19, 1945.]

McCLATCHY NEWSPAPERS (a Corporation), Respondent,
v. T. FRED ROBERTSON, Appellant.

Paul Staniford for Appellant.

Laurence B. Myers for Respondent.

BARNARD. P. J.—This is an action to collect on an open book account from the defendants, both individually and as copartners.

In August, 1939, the defendant Robertson became associated with the defendant McFarland, who then owned and operated a business known as "Standard Markets and Standard Food Stores." For convenience, this business and any partnership will be referred to as "Standard Stores." At that time Robertson invested $14,500 in the business, taking McFarland's note for that amount, it being understood that a corporation would be formed and Robertson would be given stock therein for his investment. He also went to work as a part-time buyer for Standard Stores. In October, 1939, he signed a Dunn & Bradstreet statement which described him as a partner in the business.

On October 30, 1940, this arrangement was terminated and Robertson withdrew from the business. By mutual agreement, McFarland deeded certain real property to Robertson and in payment therefor Robertson gave McFarland $8,000 in cash and cancelled the $14,500 note. McFarland assumed all debts of the business and paid a part thereof with the $8,000 he had received. McFarland made this arrangement after being advised to do so by the plaintiff herein.

On February 28, 1941, certain creditors of Standard Stores, including the plaintiff, entered into an agreement with Mc-

Farland in which they agreed to extend the time of payment of all his indebtedness, including that sued upon, to March 31, 1942, with a provision for certain monthly payments in the meantime. While this agreement recited that the creditors were signing the same in consideration of the consent of Robertson thereto, it appears without contradiction that the consent of Robertson was never obtained. In spite of this fact the creditors and McFarland carried out the provisions of the agreement until October, 1941, at which time McFarland made an assignment for the benefit of all of his creditors, which assignment was accepted by the creditors, including the plaintiff. The trustee disposed of the assets and the plaintiff received $1,904.20 as its share. In accordance with the assignment agreement the plaintiff then executed a full release of McFarland doing business as Standard Stores.

This action was then brought against the defendants individually and as copartners in the Standard Stores. The defendant Robertson set up as an affirmative defense that any partnership relationship had been dissolved and terminated on October 30, 1940, that this was known to the plaintiff, and that he had been released from any liability by the extension granted McFarland through the agreement of February 28, 1941. A similar affirmative defense was based upon the assignment for the benefit of creditors, the sale of the assets and the release given upon receipt of a pro rata share of the proceeds.

The court found that at all times material here the three defendants were copartners doing business under the name of Standard Stores; that the plaintiff had no knowledge of any termination or dissolution of said partnership; that said partnership was not dissolved or terminated prior to February 28, 1941; that on that date the plaintiff entered into an agreement with Standard Stores extending the time within which its obligation could be paid; and that at that time McFarland was acting for the copartnership. It was then found that on October 30, 1941, McFarland assigned the assets of Standard Stores to a trustee for the benefit of the creditors; that the plaintiff received its pro rata share; that McFarland instructed the trustee to obtain a satisfaction from the creditors in his individual behalf; that when he made this assignment McFarland was acting for all of the defendants although he professed to be acting only for himself; that the plaintiff exe-

cuted a release discharging McFarland from all its claims against him; and that this release did not apply to or benefit the other individual defendants. Judgment was entered in favor of defendant McFarland but in favor of the plaintiff as against Robertson and White for the balance of the amount claimed. From this judgment the defendant Robertson has appealed.

The appeal is based on the grounds that certain findings of the court are not sustained by the evidence and that the appellant was discharged from any and all debts owed by the partnership since the partnership was dissolved, the respondent was informed of that fact, and thereafter the respondent entered into an agreement extending for more than a year the payment of its claim and then participated in the assignment proceedings and shared in the proceeds thereof.

While it appears that neither the appellant nor McFarland realized that the relationship existing between them between August, 1939, and October, 1940, constituted a partnership the evidence is sufficient to support the court's finding that such a partnership then existed. However, the court's findings to the effect that this partnership was not terminated prior to February 28, 1941, that the plaintiff did not know during any of the times mentioned in the complaint that the defendants had agreed between themselves to terminate the partnership, and that in making the extension agreement of February, 1941, McFarland was acting for and on behalf of the partnership, are not supported by the evidence. The appellant testified clearly and definitely with respect to the arrangement made in October, 1940, by which he withdrew from the business and turned over an additional $8,000 to McFarland; that it was agreed that McFarland would take full responsibility for Standard Stores and the appellant would be relieved of all concern in that regard; that thereafter he had no further business relationship with McFarland; that there was a verbal agreement that McFarland would assume full responsibility for all operations from then on; that McFarland knew that from then on the appellant was not to be troubled with the obligations; that McFarland assumed these obligations; and that, thereafter, the respondent never presented a bill to him.

McFarland fully corroborated this testimony, going more into details. He testified that he had talked over the entire

matter with the respondent before making the deal with Robertson and that the respondent advised him to make this arrangement, that he fully understood that the old debts were his responsibility and had agreed that no responsibility for this indebtedness would devolve upon the appellant, and that he so informed Mr. Engstrom, the business manager of the plaintiff, and Mr. Sells, its credit manager.

Mr. Engstrom testified that in October, 1940, he talked the matter over with McFarland who made it clear to him that Robertson had severed all connection with the Standard Stores; that from then on he dealt with McFarland as an individual in the operation of the Standard Stores; that from that time on he believed that McFarland was the Standard Stores, believed that McFarland was solely responsible for the obligations of the Standard Stores and looked to McFarland for the payment of the account in question; and that Mr. Sells, respondent's credit manager, was present when McFarland explained his arrangement with Robertson.

There is no evidence to a contrary effect in the record and it appears, without contradiction, and in fact was admitted by the respondent's business manager, that he was informed at the time that Robertson had withdrawn from the business and that McFarland had assumed and was responsible for the existing and future obligations, and that he then looked solely to McFarland for the payment of this account. Thereafter, and knowing these facts, the respondent gave McFarland a year's extension of time, on certain partial payments, and then with full knowledge of the situation participated in the assignment proceedings and gave McFarland a full release.

The respondent contends that the defense of extension of time of payment is not available to the appellant because the answer did not allege that McFarland had assumed the obligations of the partnership and, further, that the evidence fails to establish that fact. The first of these contentions is without merit. The ultimate facts were sufficiently pleaded in the answer, no demurrer was filed, and the case was tried upon the theory raised by the answer that any obligation of the appellant had been assumed by McFarland with the knowledge of the respondent, and that the extension of time had thereafter been given. The respondent's second contention is based upon certain testimony of the appellant on cross-examination. When asked what arrangements he had made with McFarland toward paying off the old obligations he replied

that he had made none, and that he trusted in McFarland's ability "to work the thing out." When asked if any papers had been executed for the dissolution of the partnership he replied "No, because we had never made any papers to begin with. There wasn't anything to dissolve, as I considered it." The fact that these parties did not understand that they were partners, in a legal sense, is immaterial. It fully appears that they agreed that McFarland should assume entire responsibility, past and future, and that the respondent fully understood this fact. Appellant's testimony that no particular arrangements were made, as to just when or how the old obligations would be paid by McFarland, is neither inconsistent with the other evidence nor does it constitute any substantial evidence to the contrary.

The essential findings of the court are entirely unsupported, and under the evidence and the plain provisions of section 2430 of the Civil Code the appellant was discharged from liability on this claim by the acts of the respondent.

The judgment against the appellant is reversed with directions to make appropriate findings and to enter judgment in his favor.

Marks, J., and Griffin, J., concurred.